PAUL HASTINGS

Daniel A. Fliman
+1 212 318 6434
danfliman@paulhastings.com

November 5, 2026

**VIA ECF AND E-MAIL**

The Honorable Michael E. Wiles
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004

Re: ***In re Braskem America Finance Company, Case No. 26-12495 (MEW)***

Dear Judge Wiles:

We write on behalf of FFI Fund Ltd., FYI Ltd., and Olifant Fund, Ltd. (collectively, the "Petitioning Creditors") in response to Braskem America Finance Company's ("U.S. FinCo") request for a pre-motion conference regarding its time to respond to the involuntary petition (the "Involuntary Petition") commencing the above-captioned proceeding (the "Involuntary Case").

The Petitioning Creditors commenced the Involuntary Case on October 21, 2026, and completed service on U.S. FinCo the following day. The deadline for U.S. FinCo to respond to the Involuntary Petition is November 12, 2026. *See* Fed. R. Bankr. P. 1011(b) ("A defense or objection to the petition must be . . . filed and served within 21 days after the summons is served."). Inexplicably, U.S. FinCo waited a full week to contact the Petitioning Creditors and then, ***twelve days*** after accepting service of the Involuntary Petition, and just nine days before its response is due, asks for a potentially indefinite extension of its time to respond.

U.S. FinCo's proposal to file its response to the Involuntary Petition "[s]even days after the court's . . . determination on recognition in the chapter 15 proceedings," is a poorly disguised attempt to delay the Involuntary Case indefinitely. And it follows a pattern of U.S. FinCo availing itself of the courts in the U.S. and Brazil to frustrate creditors and avoid its obligations while refusing to engage with its largest stakeholder. A schedule that permits U.S. FinCo to postpone its response to the Involuntary Petition simply by adjourning the recognition hearing invites more delay. This is hardly an academic concern. A hearing concerning recognition is presently scheduled for December 4 (and, if an evidentiary hearing is necessary, December 8) but given the revocation of the Brazilian stay as to U.S. FinCo, coupled with its inability to achieve the requisite 50% creditor-support threshold before the statutory deadline of November 23, the fate of U.S.

FinCo's EJ proceeding is highly uncertain. And it is unlikely to be resolved before the first week of December.[1]

Even if the current schedule for recognition was likely to hold, there is no basis under the Code or the Rules to defer consideration of the Involuntary Petition based on events in Brazil or in the Chapter 15 case. To the contrary, Bankruptcy Rule 1013(a) requires that a contested involuntary petition be adjudicated "at the earliest practicable time."[2]

The other components of U.S. FinCo's proposed schedule fare no better. On October 28, a week after the Involuntary Petition was filed, U.S. FinCo proposed a schedule that would leave fact discovery open until *January of next year*. Two days later, U.S. FinCo served requests for production and interrogatories. The discovery requests suggest, and counsel has since confirmed, that U.S. FinCo intends to seek dismissal of the involuntary petition on the ill-founded grounds that the Petitioning Creditors did not commence this action in good faith, do not satisfy the three-creditor requirement of section 303(b)(1) of the Bankruptcy Code, and failed to comply with certain inapplicable provisions of the indenture.

Each of these arguments lacks merit as a matter of law, and none requires months of discovery. Nevertheless, and without conceding that U.S. FinCo is entitled to any discovery regarding these issues in advance of its response deadline, the Petitioning Creditors have agreed to search for and produce non-privileged documents and communications concerning the purpose for which they filed the Involuntary Petition, as well as documents sufficient to demonstrate that each of the Petitioning Creditors has at all times maintained a separate existence, was allocated portions of the 2041 Notes from the outset of the U.S. FinCo investment, and maintains significant assets unrelated to these positions. The Petitioning Creditors also proposed, subject to a global agreement on the scope of discovery, to stipulate certain facts related to their alleged non-compliance with certain provisions of the indenture governing the 2041 Notes. And even though U.S. FinCo waited more than a week after the Involuntary Petition was filed to serve discovery,

---

1 Notably, just today, the Brazilian appellate court rejected Braskem's attempts to stop the Involuntary Case by reviving the EJ stay. In denying Braskem's request to reimpose the stay period, the court noted US FinCo's failure to achieve creditor quorum and held it had "not demonstrated that [US FinCo] meet[s] the basic legal requirements for the granting of said period." Given the appellate court's views, it seems virtually impose for Braskem to save US FinCo's EJ proceeding and for recognition to proceed on the current timeline. A machine translated version of the decision is attached hereto as **Exhibit A**.

2 When pressed on the basis or need to adjudicate the Involuntary Petition after recognition, U.S. FinCo cited purported, hypothetical inefficiencies from litigating Section 305(a)(1) abstention separately from Section 305(a)(2) abstention (which could only become relevant after recognition). To address this, the Petitioning Creditors proposed to ask the Court to hear the Involuntary Petition (and related abstention) simultaneously with recognition. U.S. FinCo rejected that sensible sequence because its true motivation is to put the Involuntary Petition on ice for as long as possible.

the Petitioning Creditors are prepared to complete this production by the end of next week (November 13).

Accordingly, to ensure adjudication of the Involuntary Petition "at the earliest practicable time," and in recognition of the fact that U.S. FinCo urgently requires the oversight of an independent fiduciary now, not months from now, the Petitioning Creditors respectfully propose the following schedule:

- **November 13, 2026**: Completion of the Petitioning Creditors' document production, which shall be made on a rolling basis;
- **November 19, 2026**: Completion of fact discovery, including depositions;
- **November 20, 2026**: Deadline for the Petitioning Creditors to move for appointment of a chapter 11 trustee;[3]
- **November 25, 2026**: Deadline for U.S. FinCo to move to dismiss the Involuntary Petition – which is nearly two weeks *longer* than the Bankruptcy Rules dictate – and to oppose the Petitioning Creditors' motion for appointment of a chapter 11 trustee;
- **December 3, 2026**: Deadline for the Petitioning Creditors to respond to U.S. FinCo's motion to dismiss the Involuntary Petition; and
- **December 8, 2026:** Proposed hearing date.

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ Daniel A. Fliman*

Daniel A Fliman
of PAUL HASTINGS LLP

[3] U.S. FinCo alleges it would be "impermissible" to require it to oppose a trustee motion before adjudication of its motion to dismiss the Involuntary Case. Not so. Nothing in the Code or the Rules prevents a party from seeking a trustee during the gap period. To the contrary, section 1104(a) allows appointment of a trustee "at any time after the commencement of the case," and section 303(b) provides that "[a]n involuntary case against a person is ***commenced*** by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title . . . ." In any event, the Petitioning Creditors, via the proposed schedule above, request that their trustee motion be heard simultaneously with U.S. FinCo's motion to dismiss.

**Exhibit A**

**Judiciary**
**Court of Justice of the State of São Paulo**
**Office 04 - 2ndª Reserved Chamber of Business Law**

Praça João Mendes, No. - Neighborhood: Centro - ZIP Code: 01018-010 - Phone: - - https://www.tjsp.jus.br/ - Email: -

**MOTION FOR CLARIFICATION IN INTERLOCUTORY APPEAL No. 4137487-36.2026.8.26.0000/SP**

**PETITIONER:** BRASKEM NETHERLANDS B.V.
**PETITIONER:** BRASKEM AMERICA FINANCE COMPANY
**PETITIONER:** BRASKEM S.A.
**PETITIONER:** BRASKEM TRADING & SHIPPING B.V.
**Appellant:** BRASKEM NETHERLANDS FINANCE B.V.
**Appellant:** BRASKEM NETHERLANDS INC. B.V.
**Judge:** RÔMOLO RUSSO JÚNIOR
Office 04 - 2nd Reserved Chamber of Business Law

**ORDER/DECISION**

This concerns a motion for clarification (Event 40) filed by Braskem S/A and others against the decision of this Reporting Judge (Event 24), who, upon receiving the interlocutory appeal filed by them, denied the request for suspensive effect and upheld, among other rulings, the order of the *lower* court requiring the debtors to refrain from taking further actions to implement the so-called “Operation Bakide.”

The appellants, now petitioners in this appeal, contend that the decision being appealed contains a procedural defect. They allege an omission regarding the fact that the Braskem Group’s out-of-court reorganization plan expressly authorizes the implementation of “Operation Bakide.”

**Judiciary**
**Court of Justice of the State of São Paulo**
**Office 04 - 2ndª Reserved Chamber of Business Law**

They argue that the plan defines the "Braskem Idesa Investment" as any loan, investment, or contribution to Braskem Idesa contemplated or permitted by the "Braskem Idesa Restructuring Documents" (clauses 1.1.38 and 1.1.44). Items (xiii) and (xiv) of clause 5.1, in listing the events that would trigger the plan's termination, expressly exclude this investment, from which one could infer, *a contrario sensu*, express authorization for the transaction. They argue that the plan was endorsed by the *Ad Hoc* Group of foreign creditors one week after the disclosure of the main documents pertaining to the transaction. The creditors who sought the suspension at the lower court are part of that group and are sophisticated and adequately informed creditors who consented to the transaction by adhering to the plan. They assert that the appealed decision, rendered without first hearing the debtors, accepted the one-sided narrative that the transaction had been implemented in secret—a narrative that is refuted by the provisions of the plan and by the public nature of the Braskem Idesa reorganization proceedings in the United States (Chapter 11 of the U.S. Bankruptcy Code). They further assert that suspending a transaction already judicially authorized in that foreign proceeding violates the principle of minimal judicial intervention and has extremely serious consequences for the Braskem Group and the body of creditors. Finally, they request that the motion for reconsideration be granted to remedy the aforementioned omission, with the interlocutory appeal granted suspensive effect to stay all orders issued by the *lower* court related to "Operation Bakide."

The creditors who are members of the *Ad Hoc* Group filed a response (event 43), in which they argue that no omission occurred. The argument regarding the plan's approval was raised in the grounds for appeal, refuted in the response to Event 5, and recorded in the decision subject to the motion to set aside, which would indicate an intent to re-examine the merits of the case. On the merits of the motion to set aside, they argue that clause 5.1 merely excludes the investment from the list of events triggering termination. Clauses 2.8.1

**Judiciary**
**Court of Justice of the State of São Paulo**
**Office 04 - 2ndª Reserved Chamber of Business Law**

and 6.17 would expressly reserve the creditors' rights regarding the restructuring of Braskem Idesa and rule out the interpretation that conduct not expressly prohibited implies consent. They add that the history of the drafts reveals the removal, at the creditors' request, of the qualifier "Permitted" from the definition. The creditors' subsequent conduct —including requests for information and notifications to the debtors—would confirm the absence of consent. They further argue that any consent on the part of the creditors would not alter the conclusion of the decision, which is based on the reorganization court's duty to protect the collective interests of the creditors. They request the dismissal of the motion to set aside and the sealing of the documents they submitted.

Additionally, a motion for reconsideration was filed by the appellants (Event 42), along with a statement of opposition from FFI Fund Ltd. and FYI Ltd. (Event 44). In their motion, the appellants state that on October 21, 2026, FFI Fund Ltd., FYI Ltd., and Olifant Fund Ltd. filed an involuntary reorganization petition against Braskem America Finance Company in the Bankruptcy Court for the Southern District of New York (Case No. 26-12495) —that is, a petition filed by the creditors, not by the debtor itself—pursuant to Chapter 11 of the U.S. Bankruptcy Code. They state that the funds intend to request, in that proceeding, the appointment of*an* independent*trustee* to manage the company, and that they have reserved the right to challenge the recognition of the Brazilian out-of-court reorganization in the United States (Chapter 15 of the U.S. Bankruptcy Code). In light of this, they request the provisional reinstatement of *the stay period* (Article 163, paragraph 8, of Law No. 11,101/2005) to prevent the parallel and uncoordinated conduct of insolvency proceedings. In their submission, the funds oppose the reconsideration and point out that the debtors themselves acknowledged, in the original case file, that they did not reach the one-third quorum with respect to Braskem Netherlands B.V. and Braskem America Finance Company.

**This is the report.**

Judiciary
Court of Justice of the State of São Paulo
Office 04 - 2ndª Reserved Chamber of Business Law

**I hereby rule.**

**Regarding the motion for clarification.**

The motion for clarification is denied.

Pursuant to Article 1,022 of the Code of Civil Procedure, motions for clarification are intended to clarify ambiguities, eliminate contradictions, remedy omissions regarding points or issues on which the judge was required to rule either on his own motion or upon request, or correct clerical errors.

In fact, in accordance with the statutory text, motions for clarification are not intended to reopen a matter already decided, nor to obtain a new decision on the issue at hand; their effect of overturning a decision is permitted only exceptionally, whenever it is pertinent to remedy an actual defect.

In this case, despite the argument put forward by the distinguished and qualified attorneys for the petitioners, there is no omission to be remedied.

The interlocutory decision subject to the motion for clarification examined, in a clear and sufficiently reasoned manner, the central issue submitted for preliminary review, and, on sound grounds, did not recognize that the procedural requirements for granting suspensive effect to the appeal had actually been met (Article 995, sole paragraph, in conjunction with Article 1,019, item I, both of the Code of Civil Procedure).

**Judiciary**
**Court of Justice of the State of São Paulo**
**Office 04 - 2ndª Reserved Chamber of Business Law**

Based on this premise, I find that, with regard to the so-called "Operation Bakide," it has been established that:

(i) although the transaction is not subject to Brazilian jurisdiction regarding its validity and effectiveness, it falls within the scope of the extrajudicial reorganization court's jurisdiction to the extent that it involves the debtors' funds, collateral, assets, or obligations;

(ii) the companies undergoing reorganization—particularly in such a unique reorganization scenario—would be required to demonstrate that the transaction represents "a relevant option offering a real advantage, particularly to Brazilian companies," with details beyond those provided, especially in the accounting diagram and cash flow statements; and

(iii) the presentation of literal evidence of the accounting records is a fundamental obligation of the companies undergoing reorganization, as creditors cannot validly form their judgment based on an incomplete financial statement.

Furthermore, the controversy regarding the scope of the plan's clauses did not go unnoticed, having been expressly noted in the appealed decision, which emphasized that the aggrieved creditors *"deny that the plan authorized it, since clause 5.1 merely excludes it from the events triggering termination, while clauses 2.8.1 and 6.17 expressly reserve the creditors' rights."*

By asserting that, *"in the context of doubt and possible uncertainty"* arising from the transaction, *"consequential review through judicial channels is warranted, "* the appealed decision adopted a rationale that departs from the argument that the transaction was previously authorized by the plan

**Judiciary**
**Court of Justice of the State of São Paulo**
**Office 04 - 2ndª Reserved Chamber of Business Law**

and, therefore, immune from review by the reorganization court, especially since I find no explicit authorization in the Plan for the implementation of "Operation Bakite."

Furthermore, the basis for the interlocutory decision subject to this appeal does not lie in the will of the creditors who signed the plan, but rather in judicial oversight of the impacts that the aforementioned "Operation Bakite" may have on the debtors' assets and, consequently, on the common security of the entire body of creditors, without excluding those who did not adhere to the plan.

In any case, even if one were to admit that there might be some form of tacit, implied consent from the signatory creditors, this detail would not relieve the companies undergoing reorganization from the requirement to demonstrate the economic and financial rationality of the operation, as required by the challenged decision.

Furthermore, the interpretation of clauses 1.1.38, 1.1.44, 5.1, 2.8.1, and 6.17 of the plan is the subject of intense controversy between the parties, now compounded by the history of negotiations regarding the drafts attached as Exhibit 43; and therefore requires an in-depth examination, which is incompatible with the summary review characteristic of that procedural phase.

For this very reason, the appealed decision expressly stated that *"the remaining issues will be addressed in the opinion, "* noting that *"a judgment based on mature reflection is required, which is technically inappropriate at this stage of the proceedings."*

Nor is there any omission regarding the alleged failure to hear the debtors in advance. The appealed decision expressly addressed this point, acknowledging that the trial court should have conducted a prior adversarial proceeding, but establishing that the adversarial proceeding

may be mitigated (Article 9, sole paragraph, subparagraph I, of the Code of Civil Procedure) and that the extensive content of the grounds for appeal remedied the aforementioned deficiency.

It is thus evident that the appellants, with all due respect, are repeating and reiterating the arguments already raised in the draft appeal and are, in fact, seeking to reopen the discussion of the matter already decided, without any basis in significant facts and, likewise, in the absence of a causal or legal basis capable of producing a different outcome.

The issues raised by the appellants, now the petitioners, reflect an intent to have the decision rendered by this Reporting Judge reviewed. They seek to reexamine, through an inappropriate appellate proceeding, the judicial findings regarding the factual and legal issues involved in the dispute.

The fact that the judicial decision does not accept the claim made by the party does not, from a logical and legal standpoint, invalidate it, nor does it render it incomplete, obscure, or contradictory.

Having addressed the details outlined above, it should be noted that the judge is not obligated to respond to all the issues raised by the parties once he or she has found sufficient grounds to render the decision. Article 489, § 1, item IV, of the Code of Civil Procedure imposes on the judge only the duty to address the arguments capable, in theory, of invalidating the conclusion reached (Superior Court of Justice, Motion for Clarification in Writ of Mandamus No. 21.315/DF, Reporting Justice Diva Malerbi, First Section, dated June 8, 2016), which was fully observed in this case.

**Regarding the motion for reconsideration.**

**Judiciary**
**Court of Justice of the State of São Paulo**
**Office 04 - 2ndª Reserved Chamber of Business Law**

The motion for reconsideration (event 42) likewise cannot be granted.

It is true that the decision in event 24 stated that the measure *"is reversible and may be reconsidered."* However, a review by a higher court presupposes the emergence of factual and legal elements capable of altering the premises on which it was based, which is not the case here.

The denial of suspensive effect, with regard to *the stay period*, resulted from the lack of a likelihood that the appeal would be granted. It was established, in the initial review, that the statutory text provides no sound basis for the admissibility of substantive consolidation in out-of-court reorganization (Article 69-J of Law No. 11,101/2005), in line with the recent precedent of the Third Panel of the Superior Court of Justice (Special Appeal No. 2,217,146/SP, decided on December 9, 2025).

Notwithstanding the foregoing, it was established that the claims filed by Braskem Netherlands B.V. (20.4%) and Braskem America Finance Company (13.2%) do not meet the one-third threshold required by Article 163, paragraph 7, of Law No. 11,101/2005, which establishes and conditions the protection provided for in paragraph 8 of the same provision.

The reported fact—namely, the filing by creditors of an involuntary petition for reorganization of Braskem America Finance Company before the Bankruptcy Court for the Southern District of New York—does not alter any of these premises.

On the contrary. The petition filed by the debtors themselves in the original case file (Event 44, OUT2) reveals that, despite the new participation of the creditor Morgan Stanley Bank AG, the quorum regarding Braskem Netherlands B.V. rose to 27.7% and, therefore,

**Judiciary**
**Court of Justice of the State of São Paulo**
**Office 04 - 2ndª Reserved Chamber of Business Law**

remains below one-third. It also reveals that the debtors anticipate that it will not be possible to reach the required quorum of support regarding this company and Braskem America Finance Company within the specified time frame, having requested an extension from the court of origin.

Notwithstanding the foregoing, I find that the increased risk of harm alleged by the appellants was not detailed, nor was it based on objective facts.

Nevertheless, the likelihood of the substantive right raised is a legal prerequisite that must be accompanied by the existence of serious material harm; as already noted in the decision regarding Event 24, the lack of evidence supporting the substantive right raised leads, from a purely procedural standpoint, to the intrinsic inadmissibility of analyzing the risk of harm.

Consequently, it is evident that the attempt to seek reinstatement of the *stay period* due to the initiation of foreign proceedings would amount to indirectly extending the protection afforded by Article 163, paragraph 8, of Law No. 11,101/2005 to companies that, at least at this stage of summary review, have not demonstrated that they meet the basic legal requirements for the granting of said period.

Furthermore, the proceedings initiated in the United States of America and any coordination between them and the Brazilian out-of-court reorganization—including in the context of the petition for recognition filed under Chapter 15—are issues that, in addition to not having been raised before the court of origin, do not and cannot provide a legal basis for the primary objective pursued by the appellants.

Furthermore, I note that there is no lis pendens between the Brazilian jurisdiction and the U.S. jurisdiction, given that:

**Judiciary**
**Court of Justice of the State of São Paulo**
**Office 04 - 2ndª Reserved Chamber of Business Law**

"A lawsuit filed before a foreign court does not give rise to lis pendens and does not preclude the Brazilian judicial authority from hearing the same case and any related cases, subject to any contrary provisions of international treaties and bilateral agreements in force in Brazil" (Art. 24, caput, of the Code of Civil Procedure).

It is true that the aforementioned courts may render decisions that are highly irreconcilable, which will require a resolution permitted by the legal system here, without disregarding equity and the principles characteristic of judicial reorganization.

As for the motion to extend the deadline for filing proof of participation, it has been submitted to the court of origin, which is responsible for reviewing it in the first instance, under penalty of loss of jurisdiction.

**Conclusion.**

For these reasons, and in the absence of the procedural defects provided for in Article 1,022 of the Code of Civil Procedure, I deny the motion for clarification filed by the appellants and dismiss the motion for reconsideration, upholding the decision in Case No. 24 as well-founded.

Let the parties be notified.

---

Electronic document signed by **ROMOLO RUSSO JUNIOR**, pursuant to Article 1, item III, of Law 11,419, of December 19, 2006. **The document's authenticity** can be verified at https://eproc2g.tjsp.jus.br/eproc/verifica.php by entering verification code **610000922722v12** and CRC code **bb7c583b**.

**Judiciary**
**Court of Justice of the State of São Paulo**
**Office 04 - 2ndª Reserved Chamber of Business Law**

Additional signature information:
Signatory: ROMOLO RUSSO JUNIOR
Date and Time: November 5, 2026, at 4:26:04 p.m.

---

**4137487-36.2026.8.26.0000** **610000922722 .V12**